N THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | |
| v. | Case No. 03–CR–40013–JPG–9 |
| DAVID E. WHITE, Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant David E. White's Motion for Compassionate Release. (ECF No. 429). For the reasons below, the Court **DENIES** White's Motion.

### I.   PROCEDURAL & FACTUAL HISTORY

#### A.   The Conviction

In 2003, a federal grand jury in this District indicted White for conspiring to manufacture methamphetamine. (Third Superseding Indictment 1, ECF No. 63; Fourth Superseding Indictment 1, ECF No. 84). He pleaded guilty a month later, (Plea Agreement 1, ECF No. 109); and the Court sentenced him to a 210-month term of imprisonment, (Judgment 2, ECF No. 171).

In 2014, less than four months after being released, White admitted to using methamphetamine, committing forgery, and associating with a felon. (Am. Petition to Revoke 1, ECF No. 346). The Court then sentenced him to another 30 months' imprisonment to run consecutively with the 12-year state sentence that he received for financial institution robbery. (*See* Judgment for Revocation 1, ECF No. 414). He is currently incarcerated at Federal Correctional Institute ("FCI") Butner Medium I in North Carolina. (*See* White's Mot. for

Compassionate Release at 1, Ex. A). His projected release date is October 13, 2021. *Find an Inmate*, Federal Bureau of Prisons [hereinafter "BOP"] (last visited Feb. 10, 2021).[1]

### B. The Presentence Investigation Report

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about White's background and the nature and circumstances of the offense. (PSR 1, ECF No. 172).

According to the PSR, White and at least eight others were involved "in the manufacture, distribution, and use of methamphetamine in Jackson and Williamson Counties from at least June 2002, through May 2003." (*Id.* at 4). Besides "participat[ing] in numerous methamphetamine cooks," White would also steal precursor drugs or make his own. (*Id.*). He "manufactured methamphetamine on approximately 200 occasions" and cooked over six kilograms of methamphetamine in less than a year. (*Id.* at 6–7).

Aside from this offense, White previously pleaded guilty to eight other crimes, not including three juvenile convictions. (*Id.* at 8–13). For example, he pleaded guilty to battery in 2001 after he sexually assaulted a minor. (*Id.* at 12). He also pleaded guilty to domestic battery in 2003 after he struck his then-girlfriend "about the head and body with his fist and poking her with a knife." (*Id.*).

### C. White's Motion for Compassionate Release

In 2020, White moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (White's Mot. for Compassionate Release at 1). He contends that serious medical conditions—"abnormal gallbladder damage" and "[c]lear determinations of liver failure"—make him especially vulnerable to the COVID-19 virus. (*Id.* at 2). In brief, White argues

---

[1] *Available at* https://www.bop.gov/inmateloc/.

that his increased risk of experiencing serious complications if he contracts COVID-19 is an *extraordinary and compelling* reason warranting his release. (*Id.* at 1–2).

The COVID-19 virus, of course, is now a global pandemic. At FCI Butner Medium I, no inmates currently have COVID-19, 162 have recovered, and nine have died. *Coronavirus*, BOP (last visited Feb. 10, 2021).[2]

## II. LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, the defendant bears the burden of showing *not only* that he faces an increased risk from the virus, *but also* that incarceration is no longer necessary to advance the purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). White failed to meet that burden.

### A. Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The § 3553(a) factors are as follows:

    (1)    the nature and circumstances of the offense and the history and characteristic of the defendant;

    (2)    the need for the sentence imposed—

---

[2] *Available at* https://www.bop.gov/coronavirus.

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

 (3) the kinds of sentences available;

 (4) the kinds of sentence and the sentencing range established for—

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . ;

 (5) any pertinent policy statement—

    (A) issued by the Sentencing Commission . . . ; and

    (B) that . . . is in effect on the date the defendant is sentenced[;]

 (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

 (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Similarly, the Bureau of Prisons considers the following nonexclusive factors to determine whether extraordinary and compelling reasons warrant a sentence modification:

- Nature and circumstances of the inmate's offense.

- Criminal history.

- Comments from victims.

- Unresolved detainers.

- Supervised release violations.

- Institutional adjustment.

- Disciplinary infractions.

- Personal history derived from the PSR.

- Length of sentence and amount of time served. . . .

- Inmate's current age.

- Inmate's age at the time of offense and sentencing.

- Inmate's release plans (employment, medical, financial).

- Whether release would minimize the severity of the offense.

Federal Bureau of Prisons, Program Statement No. 5050.50, *Compassionate Release/Reduction in Sentence* (2019).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.' " *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). Rather, it is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is—or is not—appropriate. *See Shannon*, 518 F.3d at 496; *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[A] district court's discretion in this area—as in all sentencing matters—is broad.").

### B. Exhaustion

Before moving for compassionate release in federal court, criminal defendants must exhaust their administrative remedies with the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). In

other words, they must either (1) "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) wait 30 days to lapse "from the receipt of such a request by the warden, whichever is earlier." *Id.* This exhaustion requirement is a *mandatory claim-processing* rule, meaning that, " '[i]f properly invoked, [it] must be enforced . . . .' " *United States v. Sanford*, — F.3d —, 2021 WL 236622, at *3 (7th Cir. Jan. 25, 2021) (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 1843, 1849 (2019)). And although the Government was not ordered to respond, the Court must still "conduct a preliminary review to determine whether the motion is . . . premature." SDIL Fourth Am. Admin. Order 265 (2020).

White alleges that he moved for compassionate release with the warden of FCI Butner Medium I. (White's Mot. for Compassionate Release at 1). This is supported by record evidence showing that the warden denied his motion. (*Id.* at Ex. A.). The Court will therefore consider White's administrative remedies exhausted.

### C. The § 3553(a) Factors

The Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Director of the Bureau of Prisons is in the best position to know which inmates are most vulnerable to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released nearly 8,000 inmates that it has identified as "suitable for home confinement." *Coronavirus*, BOP (last visited Feb. 10, 2021).[3] So although not bound by any BOP

---

[3] *Available at* https://www.bop.gov/coronavirus/.

determination, the Court "will give the Director's analysis substantial weight . . . ." *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

With that in mind, the § 3553(a) factors weigh against a sentence modification here. True, White suffers from serious medical conditions that may make him especially vulnerable to COVID-19. But that risk alone cannot justify compassionate release. Although White contends that "he has made every effort to rehabilitate himself," his troubling criminal history demands greater proof that he no longer poses a public-safety risk. (White's Mot. for Compassionate Release at 3). Indeed, after serving over a decade in prison, White broke the law within months of his release. While the Court recognizes the difficult realities of addiction, that is no excuse for forgery and fraternizing with felons while on supervised release, thus placing White's character for truthfulness into question. In other words, the Court cannot merely rely on White's words. Rather, his actions suggest that he may still pose a public-safety risk. The public also has a strong deterrence interest here given the seriousness of the underlying offenses. Moreover, given the extensive time White has spent incarcerated, the Court gives some deference to the Bureau of Prisons' decision not to modify his sentence. In sum, White's continued incarceration is necessary to reflect the seriousness of the offenses, to promote respect for the law, to provide just punishment, to adequately deter White and others from engaging in further criminal conduct, and to protect the public.

### III.  CONCLUSION

The Court **DENIES** Defendant David E. White's Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Wednesday, February 10, 2021**

S/J. Phil Gilbert
**J. PHIL GILBERT
UNITED STATES DISTRICT JUDGE**
